The third case this morning is 22-30757 in the matter of Thornhill Brothers Fitness LLC v. Ellison. Good morning, Your Honors. David Waggis back with Conor Luckworthy for Anytime Fitness, LLC. The beginning of this case looks like a lot of Chapter 11 cases. You have a debtor that's stuck in state court facing a personal injury claim, files bankruptcy right before trial, and then you have your motion to lift stay by the plaintiff seeking to go against the insurance company in state court. That happens pretty regularly in Chapter 11 cases. Everything after that I've never seen before, and I've never found a case in state court or federal court that deals with a settlement that happened after that motion to lift stay was filed. That settlement required that the debtor enter into a $7 million consent judgment for which it wouldn't be liable except for the million dollars put up for its insurance company. It required that there was an assignment of rights, indemnity rights, against Anytime, and then it had a paragraph with a provision requiring the voiding of agreements with Anytime, that the rights transferred to the plaintiff would be unhindered, and that the franchise agreement would be maintained. They then got the court to approve that without any notice to Anytime, without a proper motion, no hearing, an ex parte call. They then took that consent judgment, filed it in state court where my client had counsel of record. They had won. They had been dismissed with prejudice from the state court. They were appealing. No notice. Entered that consent judgment. Entered the settlement. A few days later the plaintiff files two new suits saying it's now the assignee of the indemnity rights under the franchise agreement, and my client Anytime Fitness, who had been dismissed from the case with prejudice, was liable for the consent judgment. I've never seen anything like this ever. I haven't read anything. We've looked all over for a case like this and haven't found it. And it's a dangerous precedent. The court did vacate the order initially that it entered, but then invited a motion to approve the settlement and ultimately approved the settlement. It's a dangerous precedent. The facts are so ordinary in a bankruptcy setting, and to have this happen and reassemble rights and end up back in state court is not what bankruptcy is about. There were legal bars to this settlement. And when you look at the bankruptcy court's decision, it gets into the best interest factors and it sort of talks about these legal bars as our view of the settlement. But these are legal bars. These are provisions in the settlement agreement that violated the bankruptcy code and violated applicable law. First, Section 365 of the bankruptcy code that deals with executory contracts. The only link between Anytime Fitness, my client, and Thornhill Brothers is this franchise agreement. A franchise agreement, this is not disputed, is an executory contract under the bankruptcy code for purposes of 365. Basic tenets of Section 365 is in order for you to assign an executory contract, you first have to assume it, and there's all kinds of requirements associated with that. The other thing is you can't assume and assign pieces and parts. You either assume and assign the whole agreement or not at all. Is this a part of the bankruptcy judge's opinion where the judge is getting into, we have your arguments from Anytime Fitness, but this assignment is without warranty or representation, therefore you can fight this out in another forum. It seems like an odd ruling. I don't know whether you think it's inappropriate, but why isn't it enough to say I'm not, I, a bankruptcy judge, I'm not certifying anything, I'm just allowing this to go forward and go fight it out in state court? A few reasons. One is the requirements of 365 and all of the requirements of the bankruptcy code, which require that a debtor get court approval for transactions that are out of the ordinary course of business, whether it be assignment of an executory contract, whether it be the assignment of assets, the declaration of rights, annulment of agreements, all of that requires bankruptcy court approval. It doesn't require another court to approve it. It requires the bankruptcy court to approve it or not to approve it. But that, by a matter of bankruptcy law, is for the bankruptcy court to decide, not for some other court to decide. The other thing is that there's nothing in Section 365 or any bankruptcy case we've ever found anywhere that says that if you assign rights without warranty that somehow you evade Section 365. If you did that, if you could do that, nobody would have to comply with the onerous requirements of Section 365. You just say, well, we're assigning it without warranty. Almost all assignments by debtors are without warranty. They don't have any money. So that's not a reason. The other reason that the bankruptcy court says he doesn't have to address this issue is he says, well, he's not sure if the rights of the franchise agreement are implicated. I mean, you can read the settlement. It says all rights of indemnity. It then talks about the franchise agreement in the next paragraph being maintained, and then if there were any doubts, Section 7 specifically deals with the jury verdict form, which says the indemnity rights under the franchise agreement. And if you still weren't clear, the new suits couldn't be any clearer. The new suits are where the plaintiff says we are the assignee of the indemnity rights, quotes from the franchise agreement, and claims were liable for the consent judgment. No party argued that this somehow was not implicating the franchise agreement. They all briefed this as it was implicating the franchise agreement. In my view, the settlement couldn't be any clearer that it does. That was the point. The other issue related that the bankruptcy court didn't address is the anti-assignment provision in the franchise agreement. You know, you can't assign this franchise agreement or any rights there under without any time fitness's consent. That was not addressed by the bankruptcy court for the reason that, for really the same reasons, it appeared to me from reading the opinion. Now, that brings me to the third. If we were to agree with you hypothetically about Section 365, should we reach the anti-assignment arguments that you raised? Should you reach the anti-assignment arguments? I don't think you need to reach any arguments if you find that the settlement agreement violated Section 365. That was the thing about the rejection of all my legal bar arguments is you only had to agree with one of them. He disagreed with all of them. I think they're all good. I have four of them. But, Judge, I don't think you necessarily need to get beyond 365, but the anti-assignment provision is another one. Let me ask you, what is the key language in 365 that you say is violated by this splitting of the indemnity rights from the rest of the agreement? It's probably easier for me to address it through the cases. Well, the cases are there. I was wondering, where is this in the statute? I mean, I'm looking at F, and it talks about a trustee or a debtor in possession, what they have to assume. I'm not saying case laws are irrelevant, but it would be good if you're relying on 365 to tell me where in 365 this kind of split, what in there it runs afoul of. I think Section 365 deals with the assumption and assignment or rejection of contracts. Nowhere in 365 does it authorize parts of contracts. There are all sorts of practical reasons for that. If you assign part of a contract, there are all sorts of other parts that might go with it. But there are numerous cases. They call it cum onere. You either assume and assign everything or not at all. And I can't say that there probably is a section of the 365. It's a pretty long bankruptcy goods section. There may be one that directly addresses this, and I'm just not familiar with it. But it's a well-accepted principle for bankruptcy practitioners. No pieces and parts. It all goes or none of it goes. This other provision that deals with, you know, the declaration of rights, that the franchise agreement is maintained, that the rights are being transferred to the plaintiffs unhindered, that all of the agreements with any time are voided. There's no lawful basis for that. Those are all out-of-the-ordinary course transactions that require court approval. But there has to be a legal basis to allow a debtor to do things in bankruptcy or the rest of the world. And there is none here. These are provisions that are clearly unlawful. You can't just void agreements unless you go through Section 365 and the section that deals with rejection of agreements. The bankruptcy court here said, well, no party has identified any contract that affected. And we identified the franchise agreement as being affected. So I didn't follow why the bankruptcy court didn't have to address our legal bar that you can't just approve, as part of a settlement, the declaration of rights involving a third party who's not a party to the agreement.  Look, I've never heard of somebody entering into a consent judgment for more than what they would be liable for. I've talked to my plaintiff attorney friends. This isn't a thing. This doesn't happen. The only cases we found were the excess judgment insurer cases. Those are not applicable. But they're somewhat analogous, far less egregious. That's where you have an insurer who refuses to defend, and then there's a judgment entered for more than the amount that the defendant would normally pay, because they're going to then go after the excess. And there are lots of courts saying those are smelly and look fraudulent, and those are factors they looked at. But, look, this settlement and this consent judgment for $7 million, and you couple it with these other terms, which I can only describe as a scheme, to ensnarl my client back into state court litigation from which it's been dismissed, is at least unfairly prejudicial to a third party. And there are lots of cases, including the circuit cases cited in our brief, where they say regardless of the best interest factors, if you have a settlement agreement that is unfairly prejudicial to a third party, it cannot be approved. And that's this settlement agreement. Look, I think it's collusive and fraudulent, but it's at least unfairly prejudicial. Well, counsel, even if you're right, and I want to adopt your words, even if the bankruptcy court approved something of a shortcut, is it fair to say that ultimately if this case proceeded in the way perhaps you thought it should have, there had been litigation by Thornhill that resolved the liability of your franchise owner, and then he could have pursued the indemnity rights that he had under the agreement? Well, you know, the debtor could have done that perhaps, but they were actually indemnifying and defending any time, and their assessment that we put into evidence was that we didn't owe them any liability. That was part of the debtor case assessment evidence. But, you know, it's one thing when you have a contractual relationship with somebody for somebody to raise an issue. It's another thing when you assign those rights and you arm them into a third party plaintiff whose claims against you have already been dismissed. That to me is where you get into a scheme or something that's beyond just somebody raising their own rights under a contract, and that's why the bankruptcy code has the rules that they have about assuming and assigning contracts, so you have to comply with those. And, look, the other thing about how this all got entered, you know, without notice, without motion, they knew who Anytime's counsel was. He was counsel of record. They were appealing the dismissal of Anytime Fitness, and to do all of this stuff without putting us on notice, yeah, the bankruptcy court did vacate that order for lack of notice, not for due process or lack of fraud, but he did vacate it for lack of notice. But counsel in the response says, well, that's neither here nor there. You didn't appeal that order. We couldn't have appealed it. The order was vacated. But I think that evidence and what happens and the way that they got it approved is a stain.  They didn't want to give us notice. I'll talk about the best interest factors briefly. These factors are to assess the fairness of the settlement from the debtor's perspective. You have to put a representative of the debtor up on the stand to explain that. That's from the debtor's view. The only evidence they put on was from the plaintiff's counsel. Literally, the plaintiff's attorney took the stand, and he said he had a great case, and on the $7 million, he said that was the high end of his high end range of damages he thought we would be liable for. There was no evidence of any back and forth on the $7 million in the consent judgment. But there was no evidence from the debtor's perspective except for the evidence that Anytime Fitness put in, which was the debtor case assessment evidence, which was in counsel's letter. State court counsel for the debtor wrote a letter, explained the positions, this came into evidence, and thoroughly rejected the plaintiff's claim and said the most we're going to pay is $250,000. That was the highest offer before this $7 million offer number came into the consent judgment. There should have been, at a minimum, an adverse inference against the debtor for not putting up a witness on the stand to explain the settlement. There wasn't, and in the response it says, well, that would have been duplicative. It wasn't duplicative. There was no evidence from a debtor representative as to their view of the settlement. How does this impact the estate? You know, the duration of the case, how much it would cost us, was there insurance available, all those things. There was no evidence at all. The judge instead sort of filled the evidentiary gaps with, you know, you can read the decision and we detailed the findings that the judge made that were based on argument of counsel over and over again, argument of counsel including a finding made from an off-the-record phone call where we weren't even on the call. That evidence is not admissible and shouldn't have been considered and it shouldn't have been a finding supporting best interest. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court, Bradley Drell for Thornhill Brothers Fitness. I want to pick up on something that Judge Southwick just brought up to begin my argument, and that is what would have happened had the bankruptcy case proceeded and the stay had been lifted and a trial had been had and a judgment had been entered against Thornhill Brothers Fitness, wouldn't those indemnity rights otherwise have been pursued? Well, in the non-bankruptcy context under Louisiana Civil Code Article 2044, which is Louisiana's oblique action, an obligee or a creditor can exercise the right of an obligor, a debtor, if it increases their insolvency so long as that right is not personal to the debtor. And essentially that also would have been an issue in the bankruptcy context, meaning that if the debtor has a potential cause of action for indemnity against any time fitness, the plaintiffs, the Flins, would have rightly objected to any plan or any resolution of the bankruptcy case where those rights weren't pursued. And so essentially any time was going to end up in this situation no matter what happened because the plaintiffs, the Flins, and their counsel, Mr. Mariano, were bent on attempting to pursue these indemnity rights, and that was why the substance of the settlement was what it was. Well, it does seem to me that you would end up in that situation potentially with a much different premise, that you don't have a stipulated $7 million settlement. And that seems to be what the flaw may be in your case. Well, that may be, although at the same time it could have been more or it could have been less. We don't really know what we would have done. The record is replete, though, with Mr. Mariano's testimony that he has successfully obtained multimillion-dollar verdicts on large plaintiff cases. We were in a pro-plaintiff venue in West Baton Rouge, Paris, where Mr. Mariano is from. It's his home court. And essentially after any time summary judgments were denied on a sophisticated user issue and some other issues, they were facing an extensive liability, and we tried to find some way of resolving it. And additionally, the arguments that my friend, Mr. Wagisback, makes about the case assessment evidence that was put in that was done prior to those summary judgments being denied as to Thornhill Brothers. Markel, as a part of this settlement, Markel Insurance had insured Thornhill, put up its entire policy limits of $1 million, put up the judicial interest that was due on that $1 million, and paid the court costs to date. And still that was not enough to sate the plaintiffs, the Flynns. More importantly, I think it's clear, and this kind of dovetails into the requirements of 365, the Flynns did not want to take over a gym in Port Allen, Louisiana, to try to satisfy their judgment and operate it. And so essentially under 365, we were not assuming and assigning an executory contract. All we were assigning was a right to payment under that contract without warranty. We're not saying that you even have a valid right to payment. We're not even warranting that it's assignable. But you want, you know, essentially the Flynns wanted to attempt to pursue this indemnity agreement. They didn't want the gym. This sounds like what we used to call Texas the Mary Carter Agreement. Have you ever heard of that? Yes, I've heard of that. And I took MARE for insurance back in law school. I don't do much in the way of insurance. But essentially this is that sort of agreement, and this is what the plaintiffs insisted on. They're void in Texas. They're void in Texas, but we're in Louisiana. Well, it does say something about their desirability. But if they're legal or something comparable, we'll just have to deal with that. But it does seem to me a significant hurdle for you is whether the bankruptcy court properly approved this if, in fact, it is an assignment of part of an executory contract. Well, I don't think it is, Your Honor. You're trying to relabel it, I think. But it does look to me as a pretty good argument that we haven't accepted yet in our discussions with you that this was an executory contract. You seem to accept that. And wasn't this carving out one piece of it because the plaintiffs didn't want to run the gym? Quite understandably. But just allowing parts of the rights to go. So it sounds like Thornhill is sitting there with the gym without any indemnity rights and then somebody else for future problems, and then the indemnity rights are with somebody else. At least on its surface, it looks like a violation of case law interpreting 365. Well, I would disagree, Your Honor, and that is because we were assigning a right to payment that at that point was negligible if that point was what? Exigible. In other words, once the tort occurred and Thornhill was liable to the Flins, let's say, at that point, if they have indemnity rights, that's due then. In other words, you owe us indemnity for this particular claim. And, again, we're really talking about an assignment for a right to payment. And it's not unusual at all for a business to assign rights to payment even if they fall under an executory contract. It's typical in bankruptcy cases and in the private sector outside of bankruptcy to assign accounts receivables and proceeds of contracts to lenders and others as part of a financing transaction. And you don't have to comply with 365 merely to assign, let's say, your account receivable. And this is an account receivable by analogy. In other words, it's a right to payment. An indemnity right is nothing but that. It's an account receivable because you entered a judgment agreeing that you were liable for $7 million that someone else was going to pay. Right? So, I mean, it looks like— But we'll potentially pay. Now, keep in mind, when we made this assignment, we made it without warranty. So that's my real question is, does that matter? Because it seems that from the bankruptcy judge's perspective, when he approves the settlement, he's approving it regardless, right? So if you think of it as two different universes, one is that you're actually assigning nothing and the other is where you're actually assigning a lot, $7 million worth of a lot, both of those are approved by the bankruptcy judge. So for you to prevail, I think you have to convince me anyway that both of those would be consistent with Section 365. You can't just rely on half of it. Do you understand the question? Well, except that we didn't assume and assign the entirety of the contract under 365. We only assigned our right to payment, if any, that may or may not even be assignable. And what I would say is that even if we had assumed the contract prior to entering into this settlement, that we could have still assigned those indemnity rights to the plaintiff. Let's say that we had gone to the jury trial that week in Port Allen, Louisiana, and they had gotten what Mr. Marion had thought the case was worth, a $14 million judgment. At that point, outside of bankruptcy, he would have filed an oblique action under Louisiana Civil Code Article 2044 to pursue any time on that obligation. In the bankruptcy case, they would have said this is an asset of the estate, this right of indemnity, and you have to pursue it, and if not, you have to give us derivative standing to pursue it to meet the best interest of creditors test under Section 1129 of the code. Is there an innocent explanation other than just oversight as to how you can enter a $7 million judgment, assign the responsibility for paying it to somebody who is dismissed with prejudice from the underlying state court lawsuit, and not give them notice? It was an oversight, and also the court's CMECF system was down, and this was a very last-minute settlement to avoid a trial. I don't know if you were in the courtroom. And that's why the court, that's why the bankruptcy judge voided everything, and we started over, and we had two full-bore evidentiary hearings. Before we get to potential cure of it, I don't know if you were in the courtroom for our last argument, but we were just dealing with a case that has hundreds or thousands of plaintiffs and hundreds of thousands of docket entries, and it's really complicated, and who gets notice of what can be contested under certain circumstances. But we're talking about three people, right? We've got the Flins, Thornhill, any time. Two of them get together, and over the course of two days, this whole thing gets hammered out, and the only person who's liable for anything just happens to be absent. Seems really troubling, doesn't it? Well... But before we get to whether you can cure it, and I understand you think you can, but just pause with me for a moment and let's appreciate. The absent party is the only one holding the bag for $7 million. It's kind of troubling. But that's really the question, is are they? And that's one of the points you just raised. They've already been dismissed from the case because the state court judge found that they were not negligent. Anytime's indemnity obligation hinges on its negligence, and to be honest, I did not imagine that any time would not be able to avoid this indemnity obligation when we assigned it. I will say this, that we were under a time constraint and that, yes, we should have given notice, and that's why the court avoided the orders, and we had a full board trial where witnesses were called and evidence was adduced. But I'll be honest with you. When we were having discussions with the plaintiffs on this matter as far as what they wanted, I mean, I knew that any time had been dismissed, and I really was sort of, to be honest, surprised that this is really what they wanted as the outcome was to pursue these rights, given that any time had already been dismissed. And this may reflect poorly upon me, Judge, but... I don't understand the surprise. I mean, so any time is dismissed with prejudice and you, or I don't mean to make it personal, but your client, the Thornhill brothers, right, that entity and the Flins get together and figure out a way to get them back into the case. I don't see why that's surprising. It strikes me as quite clever on your part. It's just extremely prejudicial to the party who's then facing the barrel of a $7 million gun. Well, Your Honor, I guess to explain where I was is I didn't think these rights really had any real value, given that any time under the franchise agreement, any time only has to indemnify Thornhill for its own negligence. You had a decision by the State District Court, Judge, that had been affirmed. And why are we here? I really don't know. I'm still not sure. If it's worthless, why are you pursuing it in the state court? Why don't you go to certify the judgment and say, you owe me $7 million? I mean, isn't that what happened? I'm not sure. I thought that the judgment was taken immediately to the state court and certified that this was an obligation of any kind. No. The judgment cast in judgment Thornhill, not any time. Well, Thornhill in name only. Yes. The document that you signed, I'm having the same trouble that the Chief Judge is. The judgment you signed says you are admitting liability in name only, you'll stay in the case in name only, but that all of the money is going to come from somebody who was not involved in any way in negotiating the agreement, signing the agreement, and the moment that the bankruptcy judge enters it, you run across the street and record it in state court, and the without prejudice dismissal that was previously entered is just gone. And you can say, well, maybe it's not going to be, maybe they don't have all the same assignment rights and whatever, but you just collaterally attacked the without prejudice dismissal in the bankruptcy court. I'm not sure that we did. I think that judgment that says that they were not negligent still stands. Sure, as to them in name, but now they just, maybe collateral attack is too strong. Right, but you've undone it in practice, because now they're back in the case, it's just by virtue of the indemnity rights as opposed to direct, the direct action against them. Well, but I still think that the plaintiff has to show, one, that the rights can be assignable, and two, they have to show that any time was in fact negligent. Were you seeking to get in here something that would be easy to settle between the two of you? You get this lawsuit, you say this is nonsense, where we don't really have any claim, any times clearly out, not asking for attorney-client confidentiality, but if that's really your position, you wouldn't be here, it seems to me. You would have contacted your leasing courtroom friend on the other side and said, we're not going to pursue this, you've got a good judgment that says you're not liable. But that's not why we're here, I take it. No, and that is because Mr. Mariano insisted that he somehow believed he could get around the prior summary judgment, which I still don't understand how he can, but he was insistent on those rights. Well, you're his counsel. No, I'm not Mr. Mariano's counsel. I'm sorry. I represent Thornhill. I'm sorry. Mr. Mariano represents the Flins. I'm sorry. The last issue I want to touch on is the fraud or collusion. The bankruptcy court, as affirmed by the district court, found that there was no fraud or collusion. It isn't as if this was not an arm's-length transaction. It is not. I mean, this had been negotiated and gone to mediation prior to the bankruptcy case filing, and I can tell you that it was as close as the negotiations went. Yes, we were trying to find a creative solution so that Thornhill Brothers would not continue to be embroiled in litigation that would prevent a sale of the business, but there was no evidence of fraud or collusion in the bankruptcy court so found, and I don't think that what Mr. Wagesback has raised rises to the level of evidence necessary to show that the bankruptcy court committed manifest error in finding no fraud or collusion. And with that, if the court has no other questions. Were these closing remarks at all a surprise to you regarding the sense that what we're talking about is a little bit of nothing? I'm sorry. That what we're talking about really doesn't amount to anything? My client sees it very, very differently. Obviously, we're back in state court as we file the motion to supplement the record. They file exceptions. It gets denied. Paying more lawyers. They don't see it that way at all. They just don't understand, to be honest, don't understand how this could have happened. And, you know, I could say more, but I probably shouldn't. Tell us what you think we should do. I would request that the bankruptcy court's order approving the settlement and validating the state court actions, including the entry of the consent judgment, the settlement agreement, and the new suits, which were all taken in violation of the stay, I would request that the bankruptcy court orders be reversed. Well, you may respond to this in your brief, but Mr. Drell was saying this is really not a splintering of an executory contract and made some comparisons. Yes. The arguments about the oblique action and this is just an account receivable, those were the arguments of counsel before the bankruptcy court, and so we fully briefed that. The bankruptcy court didn't adopt his arguments. They weren't made in these briefs today. I mean, it's not an account receivable. If you read the new suits, it's the indemnity section from the Anytime Fitness Franchise Agreement. I think he did say it was comparable to an account receivable, but anyway. Even with an account receivable, you still have to follow proper motion under Section 363. It's an asset of the estate, and there are requirements under Section 363 to assign a receivable. They didn't comply with that. But, you know, the other thing I would say is that there's also this notion that – how do I say this? You know, the other attorney made me do it, and I don't know why he wanted them and all this. I've had this happen several times in my career doing bankruptcy. There's great confusion sometimes between state courts and bankruptcy courts on these bankruptcy court orders, and this is an example. You know, they have a bankruptcy court order approving all this stuff, and they say, well, you just go sort it all out in the state court. You know, it's no big deal. You should be able to – you know, you've got an order saying that the Anytime Fitness agreements are voided. These rights come down unhindered. The franchise agreement is maintained. I mean, great confusion is caused by just not following the bankruptcy code. I mean, the bankruptcy code prevents this from happening. If you just follow the rules, this doesn't get approved. The state court judgment dismissing my client with prejudice stands and lots of legal fees and turmoil, you know, for a client like mine facing what it doesn't understand. How could it possibly – how could this possibly be happening? It would have all been avoided. Thank you, Your Honors. That will conclude the audience. The cases are under submission. Thank you.